UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ROGER G. CHARLES, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 09-0199 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 16, 20 |
| | : | | |
| OFFICE OF THE ARMED FORCES MEDICAL EXAMINER *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

DENYING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;
GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the parties' cross-motions for summary judgment. The plaintiff brings suit against the Office of the Armed Forces Medical Examiner ("OAFME"), the Armed Forces Institute of Pathology ("AFIP") and the Department of Defense ("DOD") alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. For the reasons discussed below, the court denies the defendants' motion for summary judgment and grants in part and denies in part the plaintiff's cross-motion for summary judgment.

## II. BACKGROUND

### A. Factual History

The plaintiff is a retired veteran, editor of the journal *DefenseWatch* and vice-chairman of the non-profit organization, Soldiers for the Truth. Compl. ¶ 7. He is investigating the effectiveness of the body armor that the U.S. military issues to its service members. *Id.* ¶ 5.

Having learned of reports and data suggesting that the body armor may not provide sufficient protection for American troops in combat, the plaintiff began gathering empirical information in an attempt to verify these reports. *Id.* ¶¶ 4-5. On October 28, 2008, the plaintiff filed a FOIA request with the AFIP and the OAFME seeking documents related to whether any service member's deaths may have resulted from bullet wounds in torso areas, which are usually covered by body armor. *Id.* ¶ 27; Pl.'s Cross-Mot. for Summ. J. & Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Cross-Mot.") at 1. Specifically, the plaintiff sought the following information for the period between January 1, 2006 and December 31, 2007:

> 1. Any documents characterizing whether the personal body armor worn by soldiers in Iraq and/or Afghanistan performed according to specification in stopping bullets and/or shrapnel.
>
> . . . .
>
> 5. Any documents characterizing and/or analyzing fatal wounds from bullets and/or shrapnel that were inflicted on soldiers wearing personal body armor in Iraq and/or Afghanistan.
>
> 6. Any documents illustrating, summarizing and/or characterizing the point of entry of any bullets and/or shrapnel that caused fatal wounds in soldiers wearing personal body armor in Iraq and/or Afghanistan.
>
> . . . .
>
> 8. Any reports characterizing and/or analyzing the relationship between personal body armor and lethal torso injuries sustained by soldiers in Iraq and/or Afghanistan.
>
> 9. Any documents concluding that a soldier in Irag [sic] and/or Afghanistan died because that soldier's personal body armor failed to stop a ballistic device, such as a bullet or shrapnel.
>
> . . . .

Compl., Ex. A. As of January 30, 2009, the AFIP had neither produced any documents nor provided any estimate of when it might respond. *Id.* ¶ 30.

### B. Procedural History

The plaintiff filed a complaint in this court on February 3, 2009. *See generally id.* In April 2009, counsel for both parties held discussions to clarify the scope of the plaintiff's FOIA request. Decl. of Capt. Craig T. Mallak ("Mallak Decl.") ¶¶ 18, 19. Following those discussions, Captain Craig T. Mallak of the Armed Forces Medical Examiner Systems ("AFMES"), a subordinate organization within the AFIP and OAFME, convened a meeting to determine whether the AFIP or the AFMES possessed any documents responsive to the plaintiff's inquiry. *Id.* ¶¶ 1, 20. Captain Mallak identified two AFMES sources containing documents that fell within the scope of the plaintiff's request. *Id.* ¶ 22.

The first source consisted of the AFMES's autopsy files for fallen service members. *Id.* ¶ 23. The AFMES ran a database query for the autopsy files of service members who died from bullet wounds during the period between January 1, 2006 and December 31, 2007 while likely wearing body armor. *Id.* The query excluded the files of service members who suffered bullet wounds in the head or neck. *Id.* This search returned 103 autopsy files containing information such as preliminary and final autopsy reports, autopsy photographs, body diagrams, CT scans, medical records and death certificates. *Id.* Although the AFMES determined that these 103 autopsy files contained information responsive to the plaintiff's FOIA request, the AFMES nonetheless declined to release this information, *id.* ¶¶ 23, 26, invoking the FOIA statutory disclosure exemptions concerning internal agency materials, privileged intra-agency information and personal privacy, *id.* ¶ 27 (citing 5 U.S.C. §§ 552(b)(2), (5)-(6)).

The second source that the AFMES searched was the Armed Forces Medical Examiner Tracking System ("AFMETS") database, an inventory and cataloguing system used to record information about the personal effects of fallen service members who arrive at the AFMES for processing. *Id.* ¶ 24. When a service member's personal effects include body armor, AFMES personnel record the type and condition of the body armor. *Id.* The AFMES identified eighteen body armor description sheets containing information relevant to the plaintiff's FOIA request. Supplemental Decl. of Capt. Craig T. Mallak ("Supplemental Mallak Decl.") ¶¶ 3-4. Specifically, the eighteen responsive AFMETS records contained "written descriptions of wounds and wound patterns and notations of possible links between injuries sustained while wearing personal protective equipment and resulting wound patterns." *Id.* ¶ 5. Further, some or all of the eighteen responsive records indicated that the body armor under examination was not perfectly intact upon inventory. *Id.* ¶ 7. After identifying these responsive documents, the AFMES decided to withhold them under the FOIA's internal agency materials exemption. *Id.* ¶ 6 (citing 5 U.S.C. § 552(b)(2)).

In August 2009, the defendants informed the plaintiff that although they had located responsive documents, they intended to withhold all of those documents under the statutory FOIA exemptions enumerated at 5 U.S.C. §§ 552(b)(2), (5) and (6). Pl.'s Cross-Mot. at 7. On October 23, 2009, the defendants filed their motion for summary judgment, arguing that the statutory FOIA exemptions should apply with respect to the responsive documents pertaining to the plaintiff's October 2008 FOIA request. Defs.' Mot. at 3-5, 13.

In an attempt to reach a compromise and resolve this dispute, the plaintiff submitted a second, more narrow FOIA request on November 9, 2009. Pl.'s Cross-Mot., Ex. 12. The

plaintiff drafted his narrowed request to include the particular documents that the defendants had previously found to be responsive to his initial FOIA request, all of which the defendants withheld under the statutory exemptions. *Id.* Furthermore, the plaintiff agreed in his narrowed request to seek redacted forms of the responsive documents that exclude the service members' personal information and other sensitive data to accommodate the defendants' exemption concerns. *Id.* at 9 & n.7; *id.*, Ex. 12. The plaintiff's narrowed request covered the following items:

> (a) AFMETS body armor descriptions sheets, related to body armor worn by a soldier killed in Iraq or Afghanistan between January 1, 2006 and December 31, 2007, which indicate that the body armor was not intact upon receipt for inventory, and
>
> (b) autopsy reports and associated documents:
>
>> (1) indicating that a soldier killed in Iraq or Afghanistan between January 1, 2006 and December 31, 2007 suffered a fatal gunshot wound in an area likely covered by the front or rear ceramic insert plates of that soldier's body armor, and/or
>>
>> (2) commenting, discussing or indicating that the body armor worn by a soldier killed in Iraq or Afghanistan between January 1, 2006 and December 31, 2007 did not prevent a fatal wound, or was penetrated by a bullet.

Pl.'s Cross-Mot. at 9 (footnotes omitted).[1]

---

[1] The quoted text first appears in the plaintiff's opposition, and both parties refer to this language in their subsequent filings. *See* Pl.'s Cross-Mot. at 9; Reply in Supp. of Defs.' Mot. ("Defs.' Reply") at 6; Pl.'s Reply to Defs.' Opp'n to Pl.'s Cross-Mot. ("Pl.'s Reply") at 3. The language of the narrowed request in the plaintiff's November 9, 2009 letter, however, differs: "Mr. Charles specifically seeks production of: [] Body Armor description sheets from the AFMETS database corresponding to the 103 autopsies identified by Capt. Mallak. (Mallak Decl. ¶¶ 23-24)[.] [] Redacted Firearm Wound Charts associated with the 103 autopsies identified by Capt. Mallak. (Mallak Decl. ¶ 23)[.]" Pl.'s Cross-Mot., Ex. 12. The differences between the language of the plaintiff's narrowed request as presented in the parties' filings and the language in the November 9, 2009 letter are of style, not substance, and have no bearing on the court's analysis.

The plaintiff filed his opposition to the defendants' motion for summary judgment and his cross-motion for summary judgment on December 23, 2009. *See generally id.* Significantly, the plaintiff's cross-motion offered counterarguments to the defendants' claims of statutory FOIA exemptions, but only with respect to the documents sought under the plaintiff's narrowed request. *Id.* at 13. In other words, while the defendants argue for the applicability of the statutory exemptions in the context of the plaintiff's *initial* FOIA request, Defs.' Mot. at 13-37, the plaintiff addresses only those exemption arguments within the framework of his *narrowed* request. Pl.'s Cross-Mot. at 13-30.

On January 15, 2010, the defendants filed their reply in support of their motion for summary judgment. Reply in Supp. of Defs.' Mot. ("Defs.' Reply") at 9. In this reply, the defendants state that the AFMES once again reviewed the documents that were responsive to the plaintiff's initial October 2008 FOIA request, but determined that none of those records were responsive to the plaintiff's narrowed request. Defs.' Reply, Ex. 1 ("2d Mallak Decl.") ¶ 4. The plaintiff submitted a reply on January 22, 2010 in which he protested the defendants' apparent reversal on the question of whether they possess any responsive documents. Pl.'s Reply to Defs.' Opp'n to Pl.'s Cross-Mot. ("Pl.'s Reply") at 1, 8. With both motions fully briefed, the court turns now to the parties' arguments and the applicable legal standards.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment in FOIA Cases

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure. 5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). Courts may appropriately decide FOIA cases on the basis of motions for summary judgment. *Bigwood v. U.S. Agency for Int'l. Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007). Courts may grant summary judgment in FOIA cases based on affidavits and declarations provided that they are sufficiently detailed, are not merely conclusory and are not called into question by contradictory evidence in the record or evidence of the agency's bad faith. *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006).

**B. Legal Standard for Evaluating the Adequacy of an Agency Search**

Federal courts have the authority to evaluate the reasonableness of an agency's interpretation of a FOIA request. *See Harrison v. Fed. Bureau of Prisons*, 611 F. Supp. 2d 54,

67 (D.D.C. 2009). A court's conclusion that an agency's search is unreasonable and therefore inadequate constitutes an improper withholding by the agency. *Kishore v. U.S. Dep't of Justice*, 575 F. Supp. 2d 243, 252 (D.D.C. 2008) (citing *Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003)). The FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B).

To prevail on summary judgment, "the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (internal quotations and citations omitted). An agency must search for documents in good faith, using methods that are reasonably expected to produce the requested information. *Valencia-Lucena*, 180 F.3d at 326 (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The adequacy of an agency's search is measured by a "standard of reasonableness," and is "dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citations omitted). The principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable. *Oglesby*, 920 F.2d at 67 n.13 (citing *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986)); *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996). The agency need not search every record in the system or conduct a perfect search. *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *Meeropol*, 790 F.2d at 952, 956. Nor need the agency produce a document if "the agency is no longer in possession of the document[] for a reason that is not itself suspect." *SafeCard Servs.*, 926 F.2d at 1201.

Instead, to demonstrate reasonableness, the agency must set forth sufficient information

in affidavits for the court to determine, based on the facts of the case, that the search was reasonable. *Nation Magazine*, 71 F.3d at 890 (citing *Oglesby*, 920 F.2d at 68). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs.*, 926 F.2d at 1200. But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.* If the record raises substantial doubts regarding the agency's efforts, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (internal quotations and citations omitted). Any doubts about the adequacy of the search should be resolved in favor of the requester. *Negley v. F.B.I.*, 658 F. Supp. 2d 50, 59 (D.D.C. 2009) (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (noting the "congressional intent tilting the scale in favor of disclosure")).

### C. The Court Denies the Defendants' Motion for Summary Judgment and Grants in Part and Denies in Part the Plaintiff's Cross-Motion for Summary Judgment

#### 1. The Plaintiff Has Not Conceded that the Defendants' Search Was Adequate

The defendants' claim that they performed an adequate search for documents responsive to the plaintiff's initial FOIA request, Defs.' Mot. at 10-13, while the plaintiff contests the defendants' use of statutory FOIA exemptions to justify their decision to withhold the responsive documents, Pl.'s Cross-Mot. at 13. The plaintiff does not, however, specifically discuss the adequacy of the defendants' search. *See generally* Pl.'s Cross-Mot. The defendants state in their reply that the plaintiff's failure to address this issue means that the plaintiff has effectively conceded the point. Defs.' Reply at 2.

9

"[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, the court may treat those arguments that the plaintiff failed to address as conceded." *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citing *Fed. Deposit Ins. Co. v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)); *see also* LCvR 7(b). This authority, however, is discretionary, *see Bender*, 127 F.3d at 67-68 (quoting *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997)), and the court declines to invoke it here, given that the plaintiff rendered his initial request – the one to which the defendants invoked certain statutory exemptions – moot by submitting a second, narrower FOIA request in place of his initial request, *see* Pl.'s Cross-Mot. at 8-9. As for his narrowed request, the plaintiff implicitly challenged the adequacy of the defendants' search by alleging that the defendants possess responsive documents despite their assertion to the contrary. Pl.'s Reply at 3-8. The FOIA defines the term "search" to mean "to review . . . agency records for the purpose of *locating those records which are responsive to a request*." 5 U.S.C. § 552(a)(3)(D) (emphasis added). By disputing the defendants' claim that they possess no responsive documents, the plaintiff is, in effect, arguing that the defendants' search was inadequate. *See* Pl.'s Reply at 3-8. Accordingly, the plaintiff has not conceded that the defendants' search in response to his narrowed request was adequate.

### 2. The Defendants' Search for Records Responsive to the Plaintiff's Narrowed FOIA Request Was Unreasonable and Inadequate

The core of the parties' dispute in this case concerns whether the documents that the defendants identified as responsive to the plaintiff's initial FOIA request are also responsive to his narrowed request. The defendants claim that although they located documents responsive to the plaintiff's initial request, they possess no documents responsive to the plaintiff's narrowed

request. Defs.' Reply at 3. They point to the plaintiff's purpose in seeking the documents to explain their determination that the eighteen AFMETS body armor records that it identified as being responsive to his initial request are not responsive to his current, narrowed request. 2d Mallak Decl. ¶ 5. Similarly, the defendants maintain that the 103 previously-identified AFMES autopsy files do not contain any "statements" pertaining to the plaintiff's narrowed request. *Id*. ¶¶ 6-7. The plaintiff protests that he tailored his narrowed request to obtain redacted versions of the same documents that the defendants had identified as responsive to his initial request. Pl.'s Reply at 3.

The FOIA establishes that agency determinations regarding document responsiveness are part of the search process. 5 U.S.C. § 552(a)(3)(D). This court therefore reviews disputes regarding the responsiveness of a document under its authority to evaluate the reasonableness and adequacy of the agency's search. *See Valencia-Lucena*, 180 F.3d at 326 (noting that the district court has jurisdiction over challenges to the adequacy of a search); *Oglesby*, 920 F.2d at 67 n.13 (stating that courts review the reasonableness of the search, as opposed to the results). Accordingly, the court now turns to examine the reasonableness of the defendants' search related to the eighteen AFMETS body armor records and the 103 AFMES autopsy reports.

### a. The Defendants' Determination that the Eighteen AFMETS Body Armor Records Are Not Responsive is Unreasonable

The defendants initially identified eighteen AFMETS body armor records as responsive to the plaintiff's original FOIA request, but later determined that they are not responsive to the

11

plaintiff's narrowed request "in light of Mr. Charles' express purpose."[2] Supplemental Mallak Decl. ¶ 4; 2d Mallak Decl. ¶ 5. The defendants justify their assessment by arguing that agencies may look to a requestor's purpose to interpret an ambiguous FOIA request, Defs.' Reply at 7 n.2, although they cite no supporting statute or case law for this proposition, *see generally id*. Conversely, the plaintiff argues that a requestor's purpose has no relevance in determining whether an agency must disclose documents under the FOIA. Pl.'s Reply at 5 & n.5. The plaintiff cites four cases in support of his argument, *see id.*, but his reliance on these cases is misplaced because they all discuss the relevance of the requestor's purpose in determining whether a FOIA exemptions was properly applies, as opposed to whether a FOIA search was sufficient broad.[3]

Here, the defendants are using their interpretation of the plaintiff's purpose to limit their search for documents. 2d Mallak Decl. ¶ 5; Defs.' Reply at 6-7. This Circuit has held that any limitations an agency places on a FOIA search must be consistent with the agency's obligation to conduct a reasonably thorough investigation. *See McGehee v. Cent. Intelligence Agency*, 697 F.2d 1095, 1101 (D.C. Cir. 1983). *McGehee* concerned the CIA's use of a "time of request cut-off" policy in conducting FOIA searches. *Id.* at 1097. Under this policy, the CIA limited its

---

[2] According to the defendants, "the purpose of [the plaintiff's narrowed] FOIA request is to substantiate several anecdotal reports he has received regarding military service members who died from bullets that perforated the ceramic inserts used in the Interceptor Body Armor system." 2d Mallak Decl. ¶ 3.

[3] *See Bibles v. Or. Natural Desert Ass'n*, 519 U.S. 355, 356 (1997) (holding that the requestor's purpose is of no importance in a FOIA balancing analysis under Exemption 6); *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 771-72 (1989) (discussing the irrelevance of the requestor's purpose when analyzing whether an invasion of privacy is warranted under Exemption 7(C)); *Loving v. Dep't of Def.*, 550 F.3d 32, 40 (D.C. Cir. 2008) (concluding that a requestor's purpose is immaterial when applying the presidential communications privilege under Exemption 5); *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 36 (D.C. Cir. 2002) (stating that the requestor's purpose is irrelevant under Exemption 6).

FOIA searches to documents in its possession as of the date of request, even if the search itself took place at a later date. *Id.* The search in *McGehee* occurred more than two years after the CIA received the request. *Id.* The district court granted the CIA's motion for summary judgment, holding that the search was adequate despite this policy. *Id.* at 1100. The Circuit remanded the case for further consideration of the reasonableness of the search, declaring that absent some extraordinary justification, the district court should invalidate the CIA's cut-off date policy. *Id.* at 1105. The Circuit reasoned that the policy allowed the CIA to unilaterally limit the number of documents that it found pursuant to a FOIA search. *See id.* at 1103. The Circuit noted in its analysis that the FOIA is "clearly written so as to favor the disclosure of any documents not covered by one of the enumerated exemptions," and "to disfavor any effort by agency officials to shirk their responsibilities to respond promptly and fully to requests for records." *Id.* at 1101 (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976)) & n.18; *see also Public Citizen v. Dep't of State*, 276 F.3d 634, 643-44 (D.C. Cir. 2002) (invalidating an identical cut-off date policy because it permitted the agency to "withhold, with little or no justification, a potentially large number of relevant documents"); *Armstrong v. Executive Office of the President*, 830 F. Supp. 19, 23 (D.D.C. 1993) (holding an agency's search unreasonable because it produced only electronic documents and withheld paper versions of otherwise responsive documents) (citing *McGehee*, 697 F.2d at 1101); *Mayock v. Immigration & Naturalization Serv.*, 714 F. Supp. 1558, 1566 (N.D. Cal. 1989), *rev'd on other grounds*, 938 F.2d 1006 (9th Cir. 1991) (stating that an agency may not exclude electronic databases from a FOIA search for "all records") (citing *McGehee*, 697 F.2d at 1101).

Here, the defendants interpret the plaintiff's purpose and use it as a filter during their search to reduce the number of responsive documents, thereby limiting the results. The defendants state that the eighteen AFMETS body armor records that were responsive to the plaintiff's initial request are not responsive to his narrowed request in light of the plaintiff's purpose. 2d Mallak Decl. ¶ 5. As in *McGehee* and *Public Citizen*, the defendants here are reducing the number of documents that they deem responsive to the plaintiff's search, based on a criterion that the plaintiff did not articulate. *See McGehee*, 697 F.2d at 1103; *Public Citizen*, 276 F.3d at 643-44.

Because the defendants' reliance on the plaintiff's purpose during their search unreasonably limited the number of responsive documents, and because any doubts about the adequacy of a FOIA search are resolved in favor of the requestor, the court holds that the defendants' search was unreasonable with respect to the plaintiff's narrowed request for the eighteen AFMETS body armor records. *See Valencia-Lucena*, 180 F.3d at 326; *Negley*, 658 F. Supp. 2d at 59. To allow an agency to restrict the number of documents it deems responsive during a FOIA search based on its interpretation of the plaintiff's purpose in making the request constitutes an unreasonable limitation and is inconsistent with the spirit and purpose of the FOIA. *See Rose*, 425 U.S. at 361 (explaining that "the basic policy [of the FOIA is] that disclosure, not secrecy, is the dominant objective of the Act"); *McGehee*, 697 F.2d at 1101 n.18 (stating that the FOIA statute disfavors attempts by an agency to evade its responsibilities to fully disclose all responsive documents).

### b. The Defendants' Determination that the 103 AFMES Autopsy Reports Are Not Responsive Is Unreasonable

The court must also determine whether the defendants' search was reasonable as it pertains to the 103 AFMES autopsy reports that the plaintiff seeks through his narrowed request. The defendants state that their document search in connection with the plaintiff's initial request returned 103 autopsy reports. Mallak Decl. ¶ 23. The defendants initially cited statutory FOIA exemptions to justify their decision not to produce these records in response to the plaintiff's initial request. *Id.* ¶¶ 26-27. To protect the service members' families, the plaintiff's narrowed request sought redacted versions of these 103 autopsy files, excised of all information that could be used to identify the service member or the service member's unit number. Pl.'s Cross-Mot. at 9-10. In his narrowed request, the plaintiff asked for redacted autopsy reports "commenting [on], discussing or indicating" fatal bullet wounds in a service member's torso area and/or body armor failures. Pl.'s Cross-Mot. at 9. Upon receiving the plaintiff's narrowed request, the defendants again reviewed the 103 autopsy files and now claim that none of those files are responsive. 2d Mallak Decl. ¶ 7. The defendants argue that the 103 previously-responsive AFMES autopsy records contain no "statements" that address the plaintiff's narrowed request. *Id.* ¶¶ 6-7. In reply, the plaintiff argues that the defendants have misconstrued his narrowed request and are improperly excluding records based on the absence of explicitly responsive "statements," rather than examining the records holistically. Pl.'s Reply at 6. The defendants contend that they cannot interpret the plaintiff's request more expansively because it is impossible to draw "scientifically valid conclusions" regarding whether or not a given autopsy file is responsive. 2d Mallak Decl. ¶ 8. The plaintiff retorts that scientific certainty as to document responsiveness is neither expected nor required under the FOIA. Pl.'s Reply at 7-8.

As explained above, this Circuit held in *McGehee* that "any limitations" an agency places on a FOIA search must be reasonable. *McGehee*, 697 F.2d at 1101. Additionally, agencies have "a duty to construe a FOIA request liberally" when searching for responsive documents. *Nation Magazine*, 71 F.3d at 890 (citing *Truitt v. Dep't of State*, 897 F.2d 540, 544-45 (D.C. Cir. 1990)). Fulfilling this duty advances the FOIA's fundamental policy goal in favor of maximum disclosure of government documents. *Rose*, 425 U.S. at 360-61 (observing that the basic purpose of the FOIA "reflect[s] 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language'"); *see also Judicial Watch, Inc.*, 310 F. Supp. 2d at 306 (holding an agency search to be unreasonable because it did not encompass the full scope or precise language of the plaintiff's request).

The plaintiff's narrowed request seeks documents containing comments, discussions or indications of fatal torso bullet wounds and/or body armor failures. Pl.'s Cross-Mot. at 9. Nothing in the plaintiff's narrowed request suggests any intent to restrict the scope of his request only to documents containing explicit "statements" about these topics. *See generally id.* As in *McGehee* and *Public Citizen*, the defendants are placing a unilateral limitation on the plaintiff's narrowed request by focusing their search only on documents containing responsive statements. *See McGehee*, 697 F.2d at 1103; *Public Citizen*, 276 F.3d at 643-44. The effect of the defendants' limitation is to render the 103 AFMES autopsy reports unresponsive to the plaintiff's narrowed request, despite being responsive to his initial request. 2d Mallak Decl. ¶¶ 6-7; Mallak Decl. ¶ 23. Applying a unilateral limitation in this manner to exclude otherwise responsive records does not comport with the fundamental FOIA policy of maximum disclosure. *Rose*, 425 U.S. at 360-61. In addition, by focusing their search on statements rather than comments,

16

discussions or indications, the defendants are not adhering to the full scope or the precise language of the plaintiff's request, as they are required to do. *See Judicial Watch, Inc.*, 310 F. Supp. 2d at 306. Similarly, by limiting their search only to responsive "statements," the defendants have not fulfilled their duty to interpret FOIA requests liberally. *See Nation Magazine,* 71 F.3d at 890.

The defendants argue that they can only search for responsive "statements" because drawing "scientifically valid conclusions" as to responsiveness based on speculative analysis of the contents of the 103 AFMES autopsy reports is impossible. 2d Mallak Decl. ¶ 8. The defendants thus claim that a broader interpretation of the plaintiff's narrowed request encompassing anything other than statements is unavailing. *See id.* Under the FOIA, however, an agency's search need only be reasonable, not perfect. *SafeCard Servs.*, 926 F.2d at 1201. Therefore, the standard is whether the defendants' search was "reasonably calculated to discover the requested documents," *id.*, not whether the defendants could arrive at scientifically valid conclusions. Accordingly, the defendants' explanation fails to justify the limitation they place on the plaintiff's narrowed request by searching only for documents containing responsive "statements." *See McGehee*, 697 F.2d at 1103.

This court has the authority to evaluate the reasonableness of the defendants' interpretation in responding to the plaintiff's narrow request. *See Harrison*, 611 F. Supp. 2d at 67. Because the defendants unilaterally limited their search only to statements responsive to the plaintiff's request, and because any doubts about the adequacy of a FOIA search are resolved in favor of the requestor, the court holds that the defendants' search was unreasonable with respect

to the plaintiff's narrowed request for the 103 AFMES autopsy reports. *Valencia-Lucena*, 180 F.3d at 326; *Negley*, 658 F. Supp. 2d at 59.

### D. The Court Orders the Parties to Submit Supplemental Briefs on the Issue of Statutory FOIA Exemptions

The parties' previous filings discussing the applicability of certain FOIA exemptions presented arguments relating to two different FOIA requests. *See* Defs.' Mot. at 13-37; Pl.'s Cross-Mot. at 13-30. The defendants' motion for summary judgment articulates their exemption arguments concerning the documents deemed responsive to the plaintiff's *initial* FOIA request. Defs.' Mot. at 7, 13. In contrast, the plaintiff's cross-motion for summary judgment argues that the cited FOIA exemptions do not apply to the redacted versions of the documents that he seeks under his *narrowed* request. Pl.'s Cross-Mot. at 13. The defendants decline to present new exemption arguments relating to the plaintiff's narrowed request because they claim that they possess no responsive documents. Defs.' Reply at 9. The parties complicate the matter further by each claiming that the other side has conceded the issue of FOIA exemptions by not directly addressing their respective arguments. *Id.* at 5; Pl.'s Cross-Mot. at 2. To reiterate the law of this Circuit, the district court has discretion to deem an issue conceded, *see Bender*, 127 F.3d at 67-68 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997)), but the court declines to exercise that discretion under these circumstances. Instead, and in light of the court's determination that the defendants' search was unreasonable, the court directs the parties to either (1) file a joint status report indicating that the defendants have produced the disputed documents and that the matter is resolved, or (2) submit supplemental briefing on the issue of whether any FOIA exemptions apply to the redacted versions of the documents sought under the plaintiff's narrowed request.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part the plaintiff's motion for summary judgment on the issue of document responsiveness and search adequacy, denies in part the plaintiff's motion for summary judgment on all remaining issues, denies the defendants' motion for summary judgment and orders the parties to file a joint status report on or before September 14, 2010 on the issue of applying the statutory FOIA exemptions to the documents sought pursuant to the plaintiff's narrowed request.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 13th day of August, 2010.

RICARDO M. URBINA
United States District Judge