UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
ROGER G. CHARLES,                     )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )     Civil Action No. 09-199 (RWR)
                                      )
OFFICE OF THE ARMED FORCES            )
MEDICAL EXAMINER, et al.,             )
                                      )
        Defendants.                   )
_____)

MEMORANDUM OPINION AND ORDER

Plaintiff Roger Charles, a retired Marine Corps captain and journalist, brings this action against the Office of the Armed Forces Medical Examiner ("OAFME"), the Armed Forces Institute of Pathology ("AFIP"), and the Department of Defense ("DOD") alleging a violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative Procedure Act, 5 U.S.C. § 706, arising out of Charles's request for documents related to whether any service member's deaths may have resulted from bullet wounds in torso areas that are usually covered by body armor. The parties have cross-moved for summary judgment, disputing whether FOIA exemptions apply to the documents Charles seeks. Because preliminary autopsy reports were exempt from disclosure under Exemption 5, but the defendants did not demonstrate that they disclosed all reasonably segregable material, the defendants' motion for summary judgment as to the preliminary

-2-

autopsy reports will be denied without prejudice.  Because the

defendants' justifications for withholding the final autopsy

reports and in-theater medical records are not supported by the

defendants' affidavits or current law, Charles's motion for

summary judgment will be granted as to these materials.

BACKGROUND

Rogers is a veteran, a journalist, and the editor of Defense

Watch, an online journal published by the Soldiers for the Truth

Foundation.  Pl.'s Third Cross Mot. for Summ. J. ("Pl.'s Mot."),

Pl.'s Stmt. of Undisputed Material Facts in Supp. of Pl.'s Third

Cross-Mot. for Summ. J. ("Pl.'s Stmt.") ¶ 1.  Charles is

investigating the effectiveness of the body armor that the United

States military issues to its troops.  Charles v. Office of the

Armed Forces Med. Exam'r, 730 F. Supp. 2d 205, 208 (D.D.C. 2010).

"Having learned of reports and data suggesting that the body

armor may not provide sufficient protection for American troops

in combat, the plaintiff began gathering empirical information in

an attempt to verify these reports."  Id.  To further his

investigation, Charles submitted a FOIA request in October 2008

to the DOD's AFIP, which was directed to the OAFME.[1]  Defs.'

Third Mot. for Summ. J. ("Defs.' Mot."), Defs.' Stmt. of Material

---

[1] At the relevant time, Captain Craig T. Mallak was the
Armed Forces Medical Examiner for the DOD.  In that capacity,
Captain Mallak oversaw the Armed Forces Medical Examiner System
("AFMES").  "The AFMES is the only medical examiner system for
the [DOD]."  Defs.' Mot., Captain Craig T. Mallak Decl. ¶ 1.

-3-

Facts Not in Dispute ("Defs.' Stmt.") ¶ 1; Compl., Ex. E (Letter from Catherine M. With, Major, U.S. Army & Legal Counsel, AFIP, to Roger G. Charles (Sept. 10, 2008) at 1).  Charles requested records that "analyze fatal wounds from bullets that were inflicted on military service members wearing body armor in Iraq and Afghanistan between January 1, 2006 and December 31, 2007, and analyze the relationship between personal body armor and lethal torso injuries sustained by such service members."  Defs.' Stmt. ¶ 2.  "As of January 30, 2009, the AFIP had neither produced any documents nor provided any estimate of when it might respond."  <u>Charles</u>, 730 F. Supp. 2d at 209; <u>see also</u> Defs.' Mot., Captain Craig T. Mallak Decl. ("Mallak Decl.") ¶ 17.  Charles filed his complaint for injunctive relief in February 2009.

AFIP does not maintain a searchable central records system.  Thus, Captain Mallak convened a meeting of his colleagues to determine whether the Armed Forces Medical Examiner System ("AFMES") and AFIP possessed any records responsive to Charles's request.  Mallak Decl. ¶ 20.  The defendants identified 103 autopsy files and 18 body armor description sheets.  Pl.'s Stmt. 16; Defs.' Stmt. ¶¶ 3, 6.  The autopsy files included "information such as preliminary and final autopsy reports, autopsy photographs, body diagrams, CT scans, medical records and death certificates."  <u>Charles</u>, 730 F. Supp. 2d at 209.  The responsive body armor description sheets "contained written

-4-

descriptions of wounds and wound patterns and notations of

possible links between injuries sustained while wearing personal

protective equipment and resulting wound patterns.  Further, some

or all of the eighteen responsive records indicated that the body

armor under examination was not perfectly intact upon inventory."

Id. (internal citations and quotation marks omitted).  Although

the defendants identified the records as responsive to Charles's

request, they decided to withhold all of the records in their

entirety under FOIA exemptions.  Defs.' Stmt. ¶ 7.

   In October 2009, the defendants moved for summary judgment

arguing that their search for responsive records was adequate and

that all of the records responsive to Charles's request were

properly withheld.  Id. ¶ 8.  Charles filed a cross-motion for

summary judgment and an opposition in which he narrowed the scope

of his FOIA request to seek only:

> (a) [Armed Forces Medical Examiner Tracking System]
> body armor descriptions sheets, related to body armor
> worn by a soldier killed in Iraq or Afghanistan between
> January 1, 2006 and December 31, 2007, which indicate
> that the body armor was not intact upon receipt for
> inventory, and
> (b) autopsy reports and associated documents[2]:

---

[2] Under the heading "autopsy reports and associated
documents," Charles sought the production of "final autopsy
reports, preliminary autopsy reports, body diagrams, CT Scans,
[and] in-theater medical records."  Pl.'s Opp'n & Cross-Mot. for
Summ J., Mem. in Supp. of Pl.'s Opp'n & Cross-Mot. for Summ. J.
at 9 n.7; see also Defs.' Stmt. ¶ 9.  "In-theater medical records
are forms completed by military service personnel in-theater,
describing the treatment that a service member received for his
or her ultimately fatal wound(s)."  Mallak Decl. ¶ 47.

-5-

> (1) indicating that a soldier killed in Iraq or
> Afghanistan between January 1, 2006 and
> December 31, 2007 suffered a fatal gunshot wound
> in an area likely covered by the front or rear
> ceramic insert plates of that soldier's body
> armor, and/or
> (2) commenting, discussing or indicating that the
> body armor worn by a soldier killed in Iraq or
> Afghanistan between January 1, 2006 and
> December 31, 2007 did not prevent a fatal wound,
> or was penetrated by a bullet.

Pl.'s Stmt. ¶ 19; Charles, 730 F. Supp. 2d at 210.  Charles also

limited his request to copies of the responsive records with

certain information redacted, such as all personal identifying

information.[3]  The defendants re-reviewed their records and

determined that none of the records responsive to Charles's

initial request were responsive to Charles's narrowed request.

Charles, 730 F. Supp. 2d at 211.  In response, Charles "protested

the defendants' apparent reversal on the question of whether they

possess any responsive documents."  Id.

---

[3] Specifically, Charles suggested that the following
information be redacted:
> all personal identifying information, information
> regarding dates of attack and unit numbers, the
> location of any wounds or wound patterns, the location
> of any damage to body armor, the entry, exit point or
> trajectory of bullets, the identification of any need
> to improve a *specific* aspect of body armor worn by
> military service personnel or the disclosure of
> information that will identify *specific* locations of
> vulnerability in the [Interceptor Body Armor] system or
> that indicate or suggest *specific* improvements to body
> armor.

Pl.'s Stmt. ¶ 20.

-6-

On August 13, 2010, Judge Urbina issued a Memorandum Opinion and Order denying the defendants' motion for summary judgment and granting in part Charles's cross-motion for summary judgment. Id. at 217-18.  As an initial matter, Judge Urbina found that Charles's second FOIA request rendered his initial request moot. Id. at 213.  Next, Judge Urbina held that the defendants' search for records responsive to Charles's second request was unreasonable and inadequate.  Id. at 213-17.  Finally, Judge Urbina ordered the parties to submit supplemental briefing on whether any FOIA exemptions applied to the redacted versions of the documents Charles seeks under his narrowed request.  Id. at 217-18.

In October 2010, the defendants again moved for summary judgment.  In their motion, the defendants admitted to possessing records responsive to Charles's narrowed request.  They stated that they had identified 82 autopsy reports and associated documents and 7 body armor description sheets.  Pl.'s Stmt. ¶¶ 25-26.  However, the defendants stated that they were withholding the records under FOIA Exemptions 2, 5, and 6. Defs.' Stmt. ¶ 17.  Charles again filed a cross-motion for summary judgment.  In March 2011, the Supreme Court decided Milner v. Department of Navy, 131 S. Ct. 1259 (2011).  Milner abrogated Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1056 (D.C. Cir. 1981), which had held that "Exemption

-7-

2 should also cover any 'predominantly internal' materials, whose disclosure would 'significantly ris[k] circumvention of agency regulations or statutes[.]'" Milner, 131 S. Ct. at 1263 (first alteration in original) (footnote omitted) (quoting Crooker, 670 F.2d at 1056-57, 1074). In light of the intervening change in controlling law, Judge Urbina denied both motions for summary judgment without prejudice. See Minute Orders entered on Sept. 1, 2011.

The defendants now move a third time for summary judgment. The defendants no longer rely on Exemption 2 to withhold responsive records. However, the defendants "continue to withhold the preliminary and final autopsy reports, CT scans, body diagrams, and in-theater medical records that are responsive to Plaintiff's narrowed request" under Exemptions 5 and 6. Defs.' Stmt. ¶ 19.[4] The defendants further assert that the records are properly withheld in their entirety and that any responsive, non-exempt information in the records is not

---

[4] In his opposition and cross-motion for summary judgment, Charles asserts that the 7 responsive body armor description sheets have not yet been disclosed. Pl.'s Mot., Mem. in Supp. of Pl.'s Opp'n to Defs.' Third Mot. for Summ. J. & Pl.'s Third Cross-Mot. for Summ. J. at 2. The defendants do not dispute this contention. See Pl.'s Stmt. ¶ 27 (stating that the "[d]efendants have refused to produce any of the 7 body armor description sheets"); Defs.' Mot., Defs.' Third Stmt. of Genuine Issues ¶ 27 (agreeing that the fact in paragraph 27 of the Plaintiff's Statement of Undisputed Material Facts is "undisputed"). Because the defendants do not argue that the body armor description sheets are being withheld under a FOIA exemption, the responsive sheets will be ordered to be disclosed.

-8-

reasonably segregable.  Defs.' Mot., Mem. in Supp. of Defs.'
Third Mot. for Summ. J. ("Defs.' Mem.") at 2.  Charles cross-
moves for summary judgment arguing that the defendants cannot
properly withhold the responsive body armor description sheets
and autopsy files and associated documents[5] under Exemptions 5
and 6.  Pl.'s Mot., Mem. in Supp. of Pl.'s Opp'n to Defs.' Third
Mot. for Summ. J. & Pl.'s Third Cross-Mot. for Summ. J. ("Pl.'s
Mem.") at 2-3.

DISCUSSION

Summary judgment is appropriate when "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a); see also Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir.
2009).  The moving party has the initial burden "of informing the
district court of the basis for its motion, and identifying those
portions of the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, which it believes demonstrate the absence of
a genuine issue of material fact."  Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986) (internal quotation marks omitted).  The
moving party is then entitled to summary judgment "against a

---

[5] However, Charles no longer requests the CT scans and body
diagrams because he agrees that they contain only information
that Charles agreed could be redacted from the records.  Pl.'s
Mem. at 7 n.6, 9 n.7, 10 n.8, 18 n.15.

-9-

party who fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial." Id. at
322. "In considering a motion for summary judgment, [the court
should draw] all 'justifiable inferences' from the evidence . . .
in favor of the nonmovant." Cruz-Packer v. District of Columbia,
539 F. Supp. 2d 181, 189 (D.D.C. 2008) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). In a FOIA case,
"[a]gency affidavits are accorded a presumption of good faith,
which cannot be rebutted by purely speculative claims about the
existence and discoverability of other documents." SafeCard
Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991)
(internal quotation marks omitted). An agency is entitled to
summary judgment in a FOIA case if it demonstrates that no
material facts are in dispute and that all requested information
has either been produced, is unidentifiable, or exempt from
disclosure. See Students Against Genocide v. Dep't of State, 257
F.3d 828, 833 (D.C. Cir. 2001).[6]

Under the FOIA, agencies must comply with requests to make
their records available to the public unless the requested
information is exempted by clear statutory language. 5 U.S.C.
§ 552(a), (b); Oglesby v. U.S. Dep't of the Army, 79 F.3d 1172,

---

[6] Charles does not dispute that the defendants' search was
adequate.

-10-

1176 (D.C. Cir. 1996).  Section 552(b) provides nine statutory

exemptions to disclosure.  <u>See</u> 5 U.S.C. § 552(b).  In light of

the "strong presumption in favor of disclosure[,]" <u>U.S. Dep't of</u>

<u>State v. Ray</u>, 502 U.S. 164, 173 (1991), these exemptions are to

be construed as narrowly as possible to maximize access to agency

information, which is one of the overall purposes of the FOIA,

<u>Vaughn v. Rosen</u>, 484 F.2d 820, 823 (D.C. Cir. 1973).  A district

court must review de novo an agency's decision to withhold

records.  5 U.S.C. § 552(a)(4)(B).

The agency bears the burden to demonstrate that the

documents requested are exempt from disclosure, <u>see</u> <u>Assassination</u>

<u>Archives & Research Ctr. v. CIA</u>, 334 F.3d 55, 57 (D.C. Cir.

2003), since the party requesting disclosure cannot know the

precise contents of the documents withheld, <u>Vaughn</u>, 484 F.2d at

823-24.  "To provide an effective opportunity for the requesting

party to challenge the applicability of an exemption and for the

court to assess the exemption's validity, the agency must explain

the specific reason for nondisclosure."  <u>Island Film, S.A. v.</u>

<u>Dep't of the Treasury</u>, 869 F. Supp. 2d 123, 132 (D.D.C. 2012).

"To enable the Court to determine whether documents properly were

withheld, the agency must provide a detailed description of the

information withheld through the submission of a so-called

'Vaughn Index,' sufficiently detailed affidavits or declarations,

or both."  <u>Hussain v. U.S. Dep't of Homeland Sec.</u>, 674 F. Supp.

-11-

2d 260, 267 (D.D.C. 2009).  Whatever form the agency's

description takes, the description must be detailed and specific.

See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566

F.2d 242, 251 (D.C. Cir. 1977); Island Film, 869 F. Supp. 2d at

132 ("Conclusory statements and generalized claims of exemption

are insufficient to justify withholding.").

> If the agency affidavits and Vaughn index "'contain
> reasonable specificity of detail rather than mere
> conclusory statements,'" then a plaintiff must point
> either to contradictory evidence in the record or
> provide independent evidence of agency bad faith to
> demonstrate that the agency improperly invoked an
> exemption.  Williams v. FBI, 69 F.3d 1155, 1159 (D.C.
> Cir. 1995) (quoting Gallant v. NLRB, 26 F.3d 168, 171
> (D.C. Cir. 1994)).

Island Film, 869 F. Supp. 2d at 132.

I.   PRELIMINARY AUTOPSY REPORTS

     The defendants argue that "the preliminary autopsy

reports . . . that are responsive to Plaintiff's narrowed

request" are properly withheld because they are protected by the

deliberative process privilege.  Defs.' Mem. at 18.  The

defendants assert that the records "contain preliminary medical

findings used by AFMES professionals in creating final autopsy

reports and, as such, do not constitute the government's final

analysis and determinations as to cause of death."  Id.  Charles

counters that the redacted records are not protected by the

deliberative process privilege because Charles is seeking factual

information, which is not protected by the privilege.  Pl.'s Mem.

at 18-19.  He further contends that at least the factual aspects

of the reports are reasonably segregable and should be disclosed.

Id. at 19.

A.   Exemption 5

Exemption 5 of the FOIA excludes from mandatory disclosure

"inter-agency or intra-agency memorandums or letters which would

not be available by law to a party other than an agency in

litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  The

exemption exempts documents "normally privileged in the civil

discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132,

149 (1975).  Exemption 5 "covers intra-agency memoranda that

would routinely be shielded from discovery in private litigation

because of the government's executive privilege, which protects

the deliberative or policymaking processes of government

agencies." Access Reps. v. Dep't of Justice, 926 F.2d 1192, 1194

(D.C. Cir. 1991) (citing EPA v. Mink, 410 U.S. 73, 89 (1973))

(internal quotation marks omitted); Sears, 421 U.S. at 149 &

n.16).  "Exemption 5 is to be construed 'as narrowly as

consistent with efficient Government operation.'" Petroleum

Info. Corp. v. U.S. Dep't of the Interior, 976 F.2d 1429, 1434

(D.C. Cir. 1992) (quoting Mink, 410 U.S. at 87).

An agency invoking the exemption has the burden to show that

the responsive record is "predecisional" and "deliberative."  Id.

A document is predecisional if "it was generated before the

adoption of an agency policy[.]" <u>Coastal States Gas Corp. v.</u>

<u>Dep't of Energy</u>, 617 F.2d 854, 866 (D.C. Cir. 1980).  It is

deliberative if "it reflects the give-and-take of the

consultative process."  <u>Id.</u>

> The exemption thus covers recommendations, draft
> documents, proposals, suggestions, and other subjective
> documents which reflect the personal opinions of the
> writer rather than the policy of the agency.  Documents
> which are protected by the privilege are those which
> would inaccurately reflect or prematurely disclose the
> views of the agency, suggesting as agency position that
> which is as yet only a personal position.

<u>Id.</u>  "[F]actual information generally must be disclosed[.]"

<u>Petroleum Info</u>, 976 F.2d at 1434.  However, factual material may

be withheld where "disclosure 'would expose an agency's

decisionmaking process in such a way as to discourage candid

discussion within the agency and thereby undermine the agency's

ability to perform its functions.'"  <u>Quarles v. Dep't of the</u>

<u>Navy</u>, 893 F.2d 390, 392 (D.C. Cir. 1990) (quoting <u>Dudman</u>

<u>Communic'ns Corp. v. Dep't of the Air Force</u>, 815 F.2d 1565, 1568

(D.C. Cir. 1987)).

The defendants argue that the preliminary autopsy reports

are draft documents that "represent merely preliminary steps

toward arriving at the agency's final determination as to cause

of death."  Defs.' Mem. at 20-21.  "Preliminary autopsy reports

are drafted before toxicology results and/or all information or

material from in theater are received, and thus, they reflect

only a tentative view of the meaning of evidence discovered

-14-

during an autopsy." Defs.' Mot., Third Decl. of Craig T. Mallak ("3d Mallak Decl.") ¶ 12. They are also "created before the final cause and manner of death are determined by AFMES." Mallak Decl. ¶ 37. As such, "[t]he information in a preliminary autopsy report can be, and often is, altered in the final autopsy report[,]" and may reflect a different cause of death determination than the final autopsy report reflects. See 3d Mallak Decl. ¶ 12. Thus, Captain Mallak concluded that disclosing the preliminary reports may "inhibit AFMES personnel from freely expressing [their] initial opinions about the cause and manner of death." Id. ¶ 12.

The defendants' evidence shows that the preliminary autopsy reports are drafts of the final autopsy reports. Charles has cited no contradictory evidence in the record, or provided any evidence of bad faith, to undermine the agency's assessment that disclosure of the preliminary reports would inhibit candor in future reports and would disclose the agency's decisionmaking process. Because this assessment is entitled to deference and the agency has provided evidence to show that preliminary reports are protected under the deliberative process privilege, the agency properly invoked Exemption 5 to protect the preliminary autopsy reports.

-15-

B.   Segregability

An agency must disclose "[a]ny reasonably segregable portion" of an otherwise exempt record.  5 U.S.C. § 552(b).  An agency cannot withhold non-exempt portions of a document unless they "are inextricably intertwined with exempt portions."  Mead Data, 566 F.2d at 260.  An agency is presumed to have complied with its obligation to disclose non-exempt portions of the record.  Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).  However, a "district court must make specific findings of segregability regarding the documents to be withheld."  Id. at 1116.  The agency has the burden to demonstrate that it disclosed all reasonably segregable material.  To meet its burden, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"  King v. U.S. Dep't of Justice, 830 F.2d 210, 224 (D.C. Cir. 1987) (quoting Mead Data, 566 F.2d at 251).

Here, the defendants assert that the preliminary autopsy reports are properly withheld in their entirety.  Defs.' Mem. at 22.  Charles argues that the factual material in the preliminary autopsy reports is reasonably segregable from the predecisional and deliberative material in the reports and thus, should be disclosed.  The defendants contend that the factual information

in the preliminary reports is properly withheld because
"[f]actual information is often added, altered, or deleted from
these records before the autopsy report is finalized, such that
comparison of a preliminary autopsy report . . . and final
autopsy report would reveal the agency's decisionmaking process."
Defs.' Mem. at 21-22.  However, the defendants do not provide
evidence supporting this contention.  Moreover, the defendants
failed to provide a sufficiently detailed description of the
information withheld, and a detailed justification correlating
the claim that a comparison of the preliminary and final autopsy
reports would disclose the agency's decisionmaking process with a
description of the reports and the factual material they contain.
For instance, the defendants could have demonstrated that the
factual information in the preliminary autopsy reports could be
easily compared with the final reports to determine what
information was originally contained in the reports and what
information the agency ultimately concluded was correct.  See
Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048-49 (D.C.
Cir. 1982) (finding that Exemption 5 applies where "a simple
comparison between the pages sought and the official document
would reveal what material supplied by subordinates senior
officials judged appropriate for" the agency's "official
statement concerning the history of herbicide use in the Vietnam
conflict" "and what material they judged inappropriate").

-17-

Instead, the defendants submitted an affidavit that contains the conclusory statement that the "preliminary autopsy reports, including any factual material contained in them, are predecisional and deliberative." 3d Mallak Decl. ¶ 12. Because "generalized claims of exemption are insufficient to justify withholding[,]" Island Film, 869 F. Supp. 2d at 132, the defendants' motion for a judgment that there was no reasonably segregable information in the preliminary autopsy reports will be denied without prejudice.

II.  FINAL AUTOPSY REPORTS AND IN-THEATER MEDICAL RECORDS

     The defendants contend that they "properly withheld, pursuant to Exemption 6, the responsive preliminary and final autopsy reports, . . . and in-theater medical records, in their entirety." Defs.' Mem. at 10. Charles argues that Exemption 6 is inapposite because he does not seek any personally identifying information. Pl.'s Mem. at 10.

     Exemption 6 of the FOIA provides that an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C § 552(b)(6). The threshold inquiry is whether the requested information is contained in a type of file covered by the exemption. Wash. Post Co. v. U.S. Dep't of Health & Human Servs., 690 F.2d 252, 260 (D.C. Cir. 1982). If the responsive records are contained within personnel, medical or

-18-

similar files, then the court "must determine whether disclosure
would constitute a clearly unwarranted invasion of personal
privacy." Id. (internal quotation marks omitted).

Exemption 6 applies only "when the documents disclose
information attributable to an individual." Arieff v. U.S. Dep't
of Navy, 712 F.2d 1462, 1468 (D.C. Cir. 1983). "All information
which 'applies to a particular individual' is covered by
Exemption 6, regardless of the type of file in which it is
contained." Wash. Post, 690 F.2d at 260 (quoting U.S. Dep't of
State v. Wash. Post Co., 456 U.S. 595, 602 (1982)). Medical
records may be withheld under Exemption 6. Prison Legal News v.
Lappin, 780 F. Supp. 2d 29, 41 (D.D.C. 2011) (citing Bast v. U.S.
Dep't of Justice, 665 F.2d 1251, 1254 (D.C. Cir. 1981)). Each
autopsy report contains information that applies to a particular
individual, and Charles does not dispute that the autopsy reports
are "similar files" that may be subject to Exemption 6. Cf.
Badhwar v. U.S. Dep't of the Air Force, 829 F.2d 182, 185-86
(D.C. Cir. 1987) (implying that an autopsy report may be properly
withheld under Exemption 6). Thus, the medical records and
autopsy reports meet Exemption 6's threshold criterion.

"Exemption 6 'tilt[s] the balance (of disclosure interests
against privacy interests) in favor of disclosure,' and creates a
'heavy burden' for an agency invoking Exemption 6." Lardner v.
Dep't of Justice, 638 F. Supp. 2d 14, 23-24 (D.D.C. 2009)

(alteration in original) (quoting Morley v. CIA, 508 F.3d 1108, 1128 (D.C. Cir. 2007)).  To determine whether disclosure would cause a clearly unwarranted invasion of personal privacy, courts consider whether disclosure would invade privacy, and if so, the seriousness of that invasion and the public interest in disclosing the information.  Then they balance the individual privacy interests against the public interests.  Wash. Post, 690 F.2d at 260.  "Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature[.]"  Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 875 (D.C. Cir. 1989).  To properly withhold records under the exemption, the agency must establish that disclosure of the responsive records "would compromise a substantial, as opposed to de minimis, privacy interest."  Id. at 874.  On the other side of the balance, the requestor bears the burden of articulating a significant public interest, Schwaner v. Dep't of the Army, 696 F. Supp. 2d 77, 82 (D.D.C. 2010), and of showing that disclosure would advance that interest, Harrison v. Exec. Office for U.S. Attorneys, 377 F. Supp. 2d 141, 147 (D.D.C. 2005).  The only relevant public interest under the FOIA is the extent to which disclosure "advances the citizens' right to be informed about what their government up to[.]"  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 34 (D.C. Cir. 2002) (internal quotation marks omitted).  As such, there is no public

-20-

interest in disclosure that reveals "little or nothing about an agency's own conduct." <u>U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press</u>, 489 U.S. 749, 773 (1989).

The defendants assert that the deceased service members' family members have significant privacy concerns in not being confronted with the "vivid details of the last moments of a military service member's life[,]" Defs.' Mem. at 12 (citing Decl. of George W. Casey ("Casey Decl.") ¶¶ 5, 26-27, 31; 3d Mallak Decl. ¶ 14; Mallak Decl. ¶¶ 33, 47). The defendants further assert that redacting personal information from the records before disclosing them will not spare the family members anguish because the DOD has a policy to notify the family members before information related to a service members's death is publicly released even in a redacted form, Casey Decl ¶ 14, and that notification will cause the family members anguish and grief, <u>id.</u> ¶¶ 29-30. Charles retorts that after personal information is redacted from the records, it will be impossible to determine the particular individual to whom the record pertains. Pl.'s Mem. at 11-12. He also argues that the defendants cannot insulate themselves from complying with the FOIA by arguing that their own notification regulations will invade the family members' personal privacy. <u>Id.</u> at 16-17. The defendants respond that the privacy interest at stake does not stem from the public's knowledge of personal information about a

particular individual.  Instead, citing National Archives and Records Administration v. Favish, 541 U.S. 157 (2004), the defendants assert that the privacy interest here stems from families not having "the most intimate details of their loved one's death and autopsy . . . in the public domain."  Mem. in Opp'n to Pl.'s Third Cross-Mot. for Summ. J. & Reply in Supp. of Defs.' Third Mot. for Summ. J. at 4.

In Favish, the Supreme Court held that a decedent's family members have privacy interests in death-scene photographs and those interests are properly considered under FOIA Exemption 7(C).[7]  The decedent's family asserted that they had personal privacy interests in being "shielded by the exemption to secure their own refuge from a sensation-seeking culture for their own peace of mind and tranquility, not for the sake of the deceased."  541 U.S. at 166.  In a sworn declaration, the decedent's sister described the horror and devastation caused when another photograph of the decedent was leaked to the press.  She stated that the photograph gave her nightmares and that releasing more photographs would cause her family to become "the focus of conceivably unsavory and distasteful media coverage."  Id. at 167

---

[7] Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(7).

(internal quotation marks omitted).  The Court explained that there is a cultural tradition of respecting burial rites.  Id. at 168 ("Family members have a personal stake in honoring and mourning their dead and objecting to unwarranted public exploitation that, by intruding upon their own grief, tends to degrade the rites and respect they seek to accord to the deceased person who was once their own.").  This right is protected in the common law, which allows families to control "the body and death images of the deceased[.]"  Id.  Assuming that Congress legislated with this backdrop in mind, the Court held "that FOIA recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images."  Id. at 170.

The defendants insist that a similar privacy interest exists in this case.  Courts have recognized that under Exemption 6, "close relatives of a deceased person retain a certain amount of privacy interests after the decedent has passed away."  Mobley v. CIA, Civil Action Nos. 11-2072, 11-2073 (BAH), 2013 WL 452932, at *40 (D.D.C. Feb. 7, 2013).  However, "the Supreme Court's holding in [Favish] was limited to 'surviving family members' right to personal privacy with respect to their close relative's death-scene images.'"  Id. (quoting Favish, 541 U.S. at 170).  Also, in Favish, the Court was considering whether the

-23-

photographs were exempt from disclosure under Exemption 7(C), not Exemption 6.[8]

The defendants have not demonstrated that <u>Favish</u> should be applied in this different context.  For instance, the defendants have not shown that family members would be able to discern which redacted records relate to their deceased family member, unlike how such identification was possible with the photographs at issue in <u>Favish</u>.[9]  The defendants still allege that releasing the autopsy reports will "disrupt any peace of mind [surviving family members] have been able to achieve by forcing them to relive their loved one's death in graphic detail, and likely subject them to unwanted intrusions or harassment from the media." Mallack Decl. ¶¶ 39, 47.  However, without demonstrating that

_____

[8] "[B]ecause Exemption 7(C) permits withholding of such records if disclosure would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a '*clearly* unwarranted' invasion to justify nondisclosure, 'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material." <u>Am. Civil Liberties Union v. U.S. Dep't of Justice</u>, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting <u>U.S. Dep't of Def. v. FLRA</u>, 510 U.S. 487, 496 n.6 (1994)); <u>see also</u> <u>Reporters Comm. for Freedom of Press</u>, 489 U.S. at 756 (explaining that the privacy interests covered under Exemption 7(C) are broader than those covered by Exemption 6).

[9] Casey states in his declaration that there is a "distinct possibility that Families can be identified even from redacted autopsies[.]"  Casey Decl. ¶ 33.  However, this conclusory statement is insufficient for the agency to meet its burden to show that the records are properly withheld under Exemption 6. <u>See</u> <u>Judicial Watch, Inc. v. U.S. Dep't of the Treasury</u>, 796 F. Supp. 2d 13, 23 (D.D.C. 2011) (citing <u>McGehee v. CIA</u>, 697 F.2d 1095, 1102 (D.C. Cir. 1983)).

family members *will* encounter the disclosed information, *and* be
able to discern that a redacted report relates to their family
member, the defendants present no more than a mere possibility of
an invasion of personal privacy and that is insufficient to find
that Exemption 6 applies.  See Dep't of the Air Force v. Rose,
425 U.S. 352, 380 n.19 (1976) ("Exemption 6 was directed at
threats to privacy interests more palpable than mere
possibilities."); id at 382 ("Exemption 6 does not protect
against disclosure every incidental invasion of privacy[,] only
such disclosures as constitute 'clearly unwarranted' invasions of
personal privacy.").  Furthermore, even if the family members
were able to determine which redacted record pertained to their
deceased family member, the defendants have not demonstrated that
the information in the records would "shock the sensibilities of
surviving kin."  Badhwar, 829 F.2d at 186.  Thus, the defendants
have not carried their heavy burden of showing more than a de
minimis privacy interest that would justify withholding the
redacted responsive records under Exemption 6.[10]

_____

[10] In predicting pain that families would feel on receiving
notice that information about their deceased family members is
being disclosed, the defendants attempt to equate the "pain this
notification process will cause" with the "the pain from which
the Court in N.Y. Times Company v. NASA[, 782 F. Supp. 628
(D.D.C. 1991),] protected surviving family members of the Space
Shuttle Challenger astronauts."  Defs.' Mem. at 14.  New York
Times held that transcripts and recordings of voice
communications aboard the Challenger were properly withheld under
Exemption 6.  However, the court found that the family members of
the deceased astronauts had a privacy interest in the recordings

-25-

"If no significant privacy interest is implicated . . . , FOIA demands disclosure." <u>Horner</u>, 879 F.2d at 874.[11]  Thus, because the defendants have not shown that disclosing the

---

because the recordings contained intimate details: "the sound of the astronauts' voices." <u>Id.</u> at 631.  The court explained that "*[w]hat* the astronauts said may not implicate privacy interests[.]" <u>Id.</u>  "But *how* the astronauts said what they did, the very sound of the astronauts' words, does constitute a privacy interest." <u>Id.</u>  The court concluded that the privacy interest was substantial because releasing the recordings may cause the Challenger families to "be subjected not just to a barrage of mailings and personal solicitations, but also to a panoply of telephone calls from media groups as well as a disruption of their peace of mind every time a portion of the tape is played within their hearing." <u>Id.</u> at 632.  As is discussed above, the defendants have failed to establish that the families of the deceased service members will be able to identify which redacted report and record corresponds to their family members, that the privacy interest in redacted records that do not contain personally identifying information is more than de minimis, and that releasing the records will cause the family members to be unwittingly exposed to the information in the records and contacted by interested parties.

[11] In addition, there is a significant public interest in disclosure.  Charles's own purpose in seeking the information, namely, to determine whether a military service member "died from bullets that perforated the front or rear ceramic plate of their body armor," Defs.' Mem. at 15, and whether the body armor "provide[s] sufficient protection for American troops in combat," <u>Charles</u>, 730 F. Supp. 2d at 208, is not relevant in the public interest inquiry.  <u>See</u> <u>Bibles v. Or. Natural Desert Ass'n</u>, 519 U.S. 355, 356 (1997) (per curiam) ("The purposes for which the request for information is made, we said, have no bearing on whether information must be disclosed under FOIA." (internal quotation marks omitted)).  But, as Charles argues, the redacted records describing the manner and cause of death will "contribute concrete, factual detail to the growing debate regarding the adequacy of" the body armor that the government issued to American troops and implicate whether "the appropriate level of protection has been achieved."  Pl.'s Mem. at 13-14 (internal quotation marks omitted).  Thus, the information will advance the public's right to be informed about what their government is doing with respect to body armor issued to service members.

-26-

redacted final autopsy reports and in-theater medical records
will cause a clearly unwarranted invasion of personal privacy,
Exemption 6 does not justify withholding the records.[12]

<u>CONCLUSION AND ORDER</u>

Although the defendants properly invoked Exemption 5, they
have not provided sufficient evidence that they properly withheld
the preliminary autopsy reports in their entirety.  Nor have the
defendants properly invoked Exemption 6.  Accordingly, it is
hereby

ORDERED that the defendants' third motion [41] for summary
judgment be, and hereby is, DENIED without prejudice as to the
preliminary autopsy reports withheld under Exemption 5, and
DENIED as to the material withheld under Exemption 6.  It is
further

ORDERED that the plaintiff's motion [44] for summary
judgment be, and hereby is, GRANTED in part and DENIED in part.
The plaintiff's motion is denied as to the preliminary autopsy
reports withheld under Exemption 5 and granted as to the material
withheld under Exemption 6.  It is further

---

[12] The defendants also allege that the preliminary autopsy
reports are properly withheld under Exemption 6.  Redacted
preliminary autopsy reports are not exempt from disclosure under
Exemption 6 for the same reasons that the redacted final autopsy
reports and in-theater medical records are not properly withheld
under the exemption.

-27-

ORDERED that the defendants release by April 29, 2013 the 7 responsive body armor description sheets and the 82 responsive final autopsy reports and associated in-theater medical records, all in redacted form.  It is further

ORDERED that the defendants file by April 29, 2013 a supplemental memorandum, with supporting affidavits, declarations, or a <u>Vaughn</u> index, that demonstrates that the responsive preliminary autopsy reports were properly withheld in their entirety and that the defendants are not withholding non-exempt, reasonably segregable portions of the reports.

SIGNED this 27th day of March, 2013.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge